```
             UNITED STATES DISTRICT COURT
                DISTRICT OF MINNESOTA
             Civil No. 16-2245(DSD/BRT)
```

Regina Seabrook,

   Plaintiff,

v.                  **ORDER**

Independent School District #535
and Brenda Lewis,

   Defendants.

---

  Karin Ciano, Esq. and Karin Ciano Law PLLC, 310 4th Avenue South, Suite 5010, Minneapolis, MN 55415 and William L. French, Esq. and William L. French, Attorney at Law, 627 Woodhaven Court, N.E., Rochester, MN 55906, counsel for plaintiff.

  John P. Edison, Esq., Michael J. Waldspurger, Esq. and Rupp, Anderson, Squires & Waldspurger, 333 South Seventh Street, Suite 2800, Minneapolis, MN 55402, counsel for defendants.

---

  This matter is before the court upon the motion for judgment on the pleadings by defendants Independent School District No. 535 and Brenda Lewis.  Based on a review of the file, record, and proceedings herein, and for the following reasons, the court grants the motion.

**BACKGROUND**

  This discrimination dispute arises out of the school district's decision to fire plaintiff Regina Seabrook.  In June 2012, the school district hired Seabrook, an African-American woman, to develop the Student and Family Engagement (SAFE) Program.

Am. Compl. ¶¶ 5, 8-9. SAFE was intended to serve as a social and academic resource for under-served youth and their families. Id. ¶ 9. On July 1, 2012, Seabrook began her employment under the supervision of Brenda Lewis. Id. ¶ 10.

Seabrook alleges that Lewis never evaluated her performance, although she did so for "persons from non-protected classes." Id. ¶ 12. Seabrook further claims that she did not have regularly scheduled meetings with Lewis, was not invited to department meetings, and generally felt ignored. Id. ¶ 15.

Over the course of her employment, Seabrook's title and the location of her office were changed twice, but she does not allege that she suffered any reduction in pay or benefits because of these changes. Id. ¶¶ 10, 13, 17-18. Despite the change in title, she continued to work on the SAFE program in addition to other responsibilities. Id. ¶¶ 13-14.

On July 16, 2015, Seabrook filed a sexual harassment complaint against Lewis with the school district. Id. ¶ 19; see Munoz Decl. Ex. 1. In the complaint Seabrook stated that, from the summer of 2012 to the fall of 2013, Lewis made inappropriate sexual comments to her. Am. Compl. ¶ 19; see Munoz Decl. Ex. 1.[1] In August, superintendent Michael Munoz informed Seabrook that her complaint had been dismissed following an investigation. Am. Compl. ¶ 20.

---

[1] Defendants, pursuant to court order, filed Seabrook's sexual harassment complaint against Lewis under seal. See ECF No. 27.

Seabrook generally alleges that, thereafter, Lewis retaliated against her by "giving her directives out of context, brow-beating her repeatedly, and scripting all conversations she had with school principals" and that the work environment became hostile and abusive.[2]  Id. ¶ 21.

On October 5, 2015, the school district placed Seabrook on paid administrative leave for insubordination.[3]  Id. ¶ 23.  Soon after, Munoz, Lewis, and the executive director of human resources, Brooke Bass, met with Seabrook, presumably about her alleged insubordination.  Id. ¶ 24.  Seabrook claims that Munoz yelled at her, intimidated her, and told her that no one liked her or wanted to work with her.  Id.  Munoz, Lewis, and Bass then allegedly pressured Lewis to sign an agreement that would have prevented her from seeking relief from discrimination under state and federal law.  Id.  Seabrook refused to do so.  Id.  On December 8, 2015, Seabrook returned to work.  Id. ¶ 26.

On March 27, 2016, Seabrook filed a complaint with the Equal Employment Opportunity Commission (EEOC) alleging discrimination on the basis of race and sex and retaliation.  Id. ¶ 27; Munoz Decl. Ex. 3.  The EEOC investigated the claim and dismissed the complaint

---

[2] Seabrook does not provide specific examples of the alleged retaliation.

[3] Neither party has provided the court details as to what alleged behavior led to the paid administrative leave or whether and to what extent the school district investigated the matter.

on April 1. Am. Compl. ¶ 27; Munoz Decl. Ex. 4, at 1. On May 27, the school district fired Seabrook, and on June 21, the school board voted to eliminate the SAFE Program. Am. Compl. ¶ 28. Munoz told Seabrook that she was fired due to budget cuts. Id. Seabrook alleges that his explanation was untrue and pretext for race and sex discrimination. Id.

On August 19, Seabrook filed an amended complaint alleging that the school district engaged in (1) sex and race discrimination in violation of Title VII and the Minnesota Human Rights Act (MHRA); (2) retaliation in violation of Title VII and the MHRA; (3) a hostile and abusive working environment; and (4) sexual harassment. She also alleges that Lewis engaged in race discrimination in violation of 42 U.S.C. § 1981.[4] Defendants now move for judgment on the pleadings.

## DISCUSSION

**I.   Standard of Review**

The same standard of review applies to motions under Federal Rules of Civil Procedure 12(c) and 12(b)(6). Ashley Cty., Ark. v. Pfizer, Inc., 552 F.3d 659, 665 (8th Cir. 2009). Thus, in order to survive a motion for judgment on the pleadings, "a complaint must

---

[4] Seabrook also alleged that the school district violated her right to freedom of speech and discriminated against her in violation of 42 U.S.C. § 1983, but she has since voluntarily dismissed those claims. See Pl.'s Opp'n Mem. at 1 n.1.

contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (citations and internal quotation marks omitted).  A plaintiff need not make out a prima face case under Title VII to survive a motion to dismiss, but must plead some facts giving rise to a plausible claim. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511-12 (2002).  "A claim has facial plausibility when the plaintiff [has pleaded] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp v. Twombly, 550 U.S. 544, 556 (2007)).  Although a complaint need not contain detailed factual allegations, it must raise a right of relief above the speculative level.  See Twombly, 550 U.S. at 555.  "[L]abels and conclusions or a formulaic recitation of the elements of a cause of action" are not sufficient to state a claim. Iqbal, 556 U.S. at 678 (citations and internal quotation marks omitted).

The court does not consider matters outside the pleadings under Rule 12(c).  Fed. R. Civ. P. 12(d).  The court may, however, consider matters of public record and materials that are "necessarily embraced by the pleadings." Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (citation and internal quotation marks omitted).  Here, the court properly considers Seabrook's complaints to the school district and EEOC.

**II. Service of Process**

Defendants argue that the complaint should be dismissed for improper service. To properly serve a school district, a plaintiff must serve the summons and complaint on the school district's chief executive officer or a member of the school board.[5] See Fed. R. Civ. P. 4(j)(2); Minn. R. Civ. P. 4.03(e)(4). To properly serve an individual defendant, a plaintiff must deliver the summons and complaint to the defendant personally, to the defendant's residence or usual place of abode with a person of suitable age and discretion who resides there, or to an agent authorized to receive service. Fed. R. Civ. P. 4(e); Minn. R. Civ. P. 4.03(a). Here, Seabrook served John Carlson who is the school district's executive director of finance, not its chief executive officer or a member of the board as required by statute. But where a plaintiff has, in good faith, substantially complied with the rules for service of process and the defendant has not been prejudiced, a court may find that service was adequate. Devin v. Schwan's Home Servs., Inc., No. Civ. 04-4555, 2005 WL 1323919, at *3 (D. Minn. May 20, 2005).

Seabrook's process server made a good faith effort to comply with the rules for service. The school district's human resources department directed him to John Carlson's office to serve the summons and complaint. Grimes Decl. ¶ 6. Carlson identified

---

[5] The parties agree that the school district is a municipality for purposes of service of process. Minn. Stat. § 466.01 subdiv. 1.

himself as a senior administrator and stated that he would accept the summons and complaint and deliver them to the proper parties. Id. ¶ 7. The process server reasonably relied on Carlson's representation, and defendants do not claim they were prejudiced by the technical error. See Van Hoven Co. v. Stans, 319 F. Supp. 180, 182 (D. Minn. 1970) ("It is sufficient ... that a responsible person who declared himself to be in charge of the office was served, particularly where there is no showing that any technical errors ... were prejudicial to the defendant."). Under these circumstances, the court finds that service was sufficient as to the school district.[6]

This analysis, however, does not apply to individual defendants. See Atkins v. Winchester Homes, No. CCB-06-278, 2007 WL 269083, at *5 (D. Md. Jan. 17, 2007) ("A co-worker is typically not considered an agent authorized to accept service under Rule 4(e), and the actual acceptance of service by the co-worker does not necessarily indicating that service was properly effectuated on the individual defendants."); see also 4A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1907 (4th ed.

---

[6] The parties argue that the court should convert the instant motion to one for summary judgment if it relies on the declarations and exhibits submitted regarding proper service. "However, in addressing a motion to dismiss based on ineffective service of process, the Court necessarily must review matters outside the pleadings. Review of this evidence does not require converting the motion to one for summary judgment." Personalized Brokerage Servs. v. Lucius, No. 05-1663, 2006 WL 2975308, at *1 (D. Minn. Oct. 16, 2006).

2016) ("[T]he federal courts have held that claims by an agent of having authority to receive process or the fact that an agent actually accepts process is not enough to bind the defendant to the court's jurisdiction ...."). There is no evidence that Carlson was authorized to accept service on behalf of Lewis in her individual capacity. Therefore, Lewis was not properly served, and the claim against her must be dismissed.

The court will not decide whether Seabrook's subsequent service on Lewis on December 27, 2016, was proper or whether Seabrook should be allowed to cure any defects in service because Seabrook fails to state a plausible claim against her.

**III. Title VII and MHRA Claims**

    **A.   Statute of Limitations**

Title VII requires a charge of discrimination to be filed no later than 180 days after the alleged conduct. 42 U.S.C. § 2000e-5(e)(1). The MHRA imposes a one-year statute of limitations. Minn. Stat. § 363A.28, subdiv. 3(a). Seabrook filed her charge of discrimination with the EEOC on March 27, 2016, and then filed this action on June 29, 2016. Defendants argue that the race and sex discrimination claims are barred by the MHRA and Title VII to the extent they are based on conduct that occurred before June 29, 2015, or September 29, 2015, respectively.

Defendants, however, fail to distinguish between discrete and continuous violations. Discrete adverse employment actions, such

8

as termination, "start[] a new clock for filing charges alleging that act" whereas continuing violations, which are based on ongoing and continuous conduct, are not time barred if "all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113, 122 (2002).

Seabrook has pleaded both discrete and continuous violations. Because the statute of limitations would not entirely bar any of Seabrook's claims, the court will not discuss whether each instance of alleged conduct is time-barred. Further, such an analysis is unnecessary because, as discussed below, the court must dismiss the complaint for failure to state a claim.[7]

**B.  Exhaustion**

Defendants argue that Seabrook's Title VII claims relating to her termination must be dismissed for failure to exhaust administrative remedies.[8]  The court agrees.

Under Title VII, an employee must exhaust administrative remedies by filing a timely charge of discrimination with the EEOC. Brooks v. Midwest Heart Grp., 655 F.3d 796, 800 (8th Cir. 2011).

---

[7] Even if some of the conduct underlying Seabrook's claims is time-barred, the court still considers the conduct as "background evidence in support of a timely claim." Id. at 113.

[8] Seabrook also seems to base her claims on the school district's decision to eliminate the SAFE program. Because that decision was made after her termination, it cannot be considered an adverse employment action as it relates to Seabrook.

"Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice that must be individually addressed before the EEOC." Sellers v. Deere & Co., 791 F.3d 938, 943 (8th Cir. 2015).

Seabrook's EEOC charge of sex discrimination, race discrimination, and retaliation preceded her termination. Therefore, Seabrook, before filing this suit, needed to file a separate charge of race and sex discrimination and retaliation as it related to her termination. See Richter v. Advance Auto Parts, Inc., 686 F.3d 847, 852 (8th Cir. 2012) (holding that plaintiff had not exhausted administrative remedies when he failed to file a separate charge with the EEOC after his employer terminated him). Her failure to do so is fatal to her Title VII termination claims.

Seabrook requests that the court equitably toll the statute of limitations so that she may exhaust her administrative remedies. Even if Seabrook exhausted her administrative remedies, however, the complaint would still fail to state a claim.

### C. Failure to State a Claim

To survive dismissal, Seabrook need not plead a prima facie case of discrimination because "the prima facie standard is an evidentiary standard, not a pleading standard." Blomker v. Jewell, 831 F.3d 1051, 1056 (8th Cir. 2016) (citation and internal quotation marks omitted). Seabrook must, however, plead sufficient facts to state a plausible claim to relief, and "the elements of a

10

prima facie case may be used as a prism to shed light upon the plausibility of the clam." Id. (citation and internal quotation marks omitted). In other words, the elements of a prima facie case "are part of the background against which a plausibility determination should be made." Id. (citation and internal quotation marks omitted).

### 1. Race and Sex Discrimination

The court analyzes discrimination and retaliation claims under Title VII and the MHRA identically. Torgenson v. City of Rochester, 643 F.3d 1031, 1043 (8th Cir. 2011). A plaintiff pleads a plausible claim for race or sex discrimination when she alleges facts that suggest she suffered an adverse employment action motivated by discriminatory intent. Fiero v. CSG Sys., Inc., 759 F.3d 874, 878 (8th Cir. 2014); Putman v. Unity Health Sys., 348 F.3d 732, 735 (8th Cir. 2003). "An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage." Sellers, 791 F.3d at 942 (citations and internal quotation marks omitted). A material employment disadvantage need not "always involve termination or even a decrease in benefits or pay. However, not everything that makes an employee unhappy is an actionable adverse action." Id. (citation and internal quotation marks omitted).

Here, the only adverse employment action Seabrook suffered was her termination. Contrary to her claim that defendants failed to

11

evaluate her, changed her title and office location, generally mistreated her, and placed her on paid administrative leave, she does not plausibly allege how or even that those actions materially disadvantaged her. See, e.g., Higgins v. Gonzalez, 481 F.3d 578, 585 (8th Cir. 2007), abrogated on other grounds by Torgenson, 643 F.3d 1031 (8th Cir. 2011) ("Any lack, of mentoring or supervision simply does not rise to the level of an adverse employment action ...."); Singletary v. Mo. Dep't of Corrections, 423 F.3d 886, 892-93 (8th Cir. 2005) (holding that being placed on paid administrative leave is not an adverse employment action); Kerns v. Capital Graphics, Inc., 178 F.3d 1011, 1016-17 (8th Cir. 1999) ("Minor changes in duties or working conditions that cause no materially significant disadvantage do not meet the standard of an adverse employment action ....").

Even assuming that those events constitute adverse employment actions, the complaint is devoid of any facts tying defendants' conduct to discriminatory animus. Seabrook pleads no facts establishing that she was treated differently than male employees or that she was treated differently than similarly situated white employees. Rather, in support of her position, Seabrook alleges that (1) an African-American male employee, who also felt ignored, was allegedly fired because Lewis thought he was lazy; (2) Lewis made sexual comments based on racial stereotypes; and (3) the U.S. Department of Education criticized the school district for

12

disproportionately disciplining students of color. The allegations, taken as true, do not support her claim that she was was mistreated and fired because of her race or sex. Seabrook pleads no facts showing that the male African-American employee was fired because of race, and the U.S. Department of Education report does not suggest that African-American employees were discriminated against. Indeed, the school district is voluntarily working with the Department of Education to improve its student anti-discrimination policies. See Munoz Decl. Ex. 2. Moreover, certain of Lewis's alleged comments to Seabrook, although inappropriate, were not racial or overtly sexual in nature. See Munoz Decl. Ex. 1. As a result, the complaint fails to state a plausible claim for race or sex discrimination, and the court dismisses those claims.

**2. Retaliation**

Seabrook asserts that she was terminated in retaliation for filing complaints with the school district and the EEOC. "To establish a prima facie case of retaliation, the plaintiff must show that [s]he engaged in a protected activity, that the defendant took adverse action against [her], and that there is a connection between the two." Scott v. County of Ramsey, 180 F.3d 913, 917 (8th Cir. 1999). Here, the requisite causal connection is missing.[9] "Generally, more than a temporal connection between the

---

[9] As discussed, the court does not require Seabrook to establish a prima facie case of retaliation, but does view her complaint in light of the claim's elements to determine whether she

protected conduct and the adverse employment action is required ...." Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1136 (8th Cir. 1999). Even if she could establish a prima facie case of retaliation, there is no evidence of pretext. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 804 (1973) ("[Plaintiff] must ... be afforded a fair opportunity to show that [defendant's] stated reason ... was in fact pretext."). Seabrook conclusorly alleges that Munoz's explanation that she was fired due to budget cuts was mere pretext for retaliation. The complaint is devoid of any facts to support that claim. As a result, the court dismisses the retaliation claims.

**IV. Sexual Harassment and Hostile Work Environment Claims**

    **A.   Statute of Limitations**

Defendants argue that Seabrook's sexual harassment claim is barred by the statute of limitations. The court disagrees. A sexual harassment claim need not be based on sexually explicit acts, but can include any "sufficiently patterned or pervasive" unequal treatment due to the employee's sex. Kopp v. Samaritan Health Sys., Inc., 13 F.3d 264, 269 (8th Cir. 1993). Further, under the continuing violation doctrine, a court must consider "incidents which occurred outside the statute of limitations period if the various acts of discrimination constitute a continuing pattern of discrimination." Mandy v. Minn. Mining & Mfg., 940 F.

---

has stated a plausible claim.

Supp. 1463, 1468 (D. Minn. 1996).

Although some of Lewis's alleged sexual comments were made between 2012-2013, and are therefore outside the limitations period, Seabrook alleges continued sex discrimination up to and including her termination. Therefore, the sexual harassment claim is timely.

**B.   Failure to State a Claim**

Although timely, the complaint fails to state a plausible claim of sexual harassment. There are three ways a plaintiff can show sexual harassment by a person of the same sex. McCown v. St. John's Health Sys., 349 F.3d 540, 543 (8th Cir. 2003) (citing Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80-81 (1998)). She can plead facts showing that: (1) "the conduct was motivated by sexual desire;" (2) "the harasser was motivated by a general hostility to the presence of the same gender in the workplace;" or (3) the harasser treated males and females differently in the workplace. Id.

Here, Seabrook pleads no facts giving rise to a plausible sexual harassment claim. The comments to Seabrook, while unwelcome, do no support the conclusion that Lewis was motivated by sexual desire, that she treated men and women differently in the workplace, or that she was hostile to women. Therefore, the court dismisses the sexual harassment claim.

15

Even if Seabrook could establish that Lewis sexually harassed her, nothing in the complaint gives rise to a claim against the school district.[10]  To state a claim for a hostile work environment under Title VII and the MHRA, Seabrook must show: "(1) that she was a member of a protected group; (2) the occurrence of unwelcome harassment; (3) a casual nexus between the harassment and her membership in the protected group; (4) that the harassment affected a term, condition, or privilege of her employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt and effective remedial action." Vajdl v. Mesabi Acad. of KidsPeace, Inc., 484 F.3d 546, 550 (8th Cir. 2007); see also Goins v. W. Grp., 635 N.W.2d 717, 725 (Minn. 2001) (MHRA). "Hostile work environment claims are limited in nature, requiring a high evidentiary showing that the plaintiff's workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Vajdl, 484 F.3d at 550.  "The standards for a hostile environment are demanding, and conduct must be extreme and not merely rude or unpleasant to affect the terms and conditions of employment." Alvarez v. Des Moines Bolt Supply, Inc., 626 F.3d 410, 420 (8th

---

[10] The court will treat the hostile work environment claim as including harassment based on both race and sex.  Because Seabrook brought a sexual harassment claim against the school district but not Lewis, it is unclear whether or how her sexual harassment claim differs from her hostile work environment claim.

16

Cir. 2010) (internal quotation marks and citation omitted).  A few isolated incidents of unpleasant conduct are insufficient to establish a hostile work environment.  <u>Blomker</u>, 831 F.3d at 1057.

As previously discussed, the complaint contains no facts that suggest the alleged mistreatment was due to Seabrook's race or sex. Further, Seabrook's claims, taken as true, amount to isolated incidents of being yelled at, ignored, and told inappropriate jokes.  Although unpleasant, this conduct is not so pervasive or severe as to give rise to a harassment or hostile work environment claim.  As a result, the court dismisses those claims.

**V.   Section 1981 Claim**

The elements of a Title VII claim and a § 1981 claim are identical.  <u>Wright v. St. Vincent Health Sys.</u>, 730 F.3d 732, 737 (8th Cir. 2013).  Because Seabrook has failed to plead facts giving rise to a plausible Title VII claim, the court must also dismiss her § 1981 claim.

**CONCLUSION**

Accordingly, based on the above, **IT IS HEREBY ORDERED** that:

1. Defendants' motion for judgment on the pleadings [ECF No. 28] is granted; and

2. The case is dismissed with prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated: February 21, 2017

s/David S. Doty
David S. Doty, Judge
United States District Court
